First case is United States of America v. Mark Unrein, and I see Mr. Burns is ready to go. Ms. Sider is here for the government. May I proceed, Mr. Burns? Good morning, Your Honors, and may it please the Court. I'm Thomas Burns, and I represent Mr. Unrein. The District Court committed two errors when it precluded Mr. Unrein's entrapment defense. First, it committed a harmful legal error when it denied the entrapment instruction, and second, it committed structural error when it prevented Mr. Unrein from presenting an entrapment story to the jury. Aren't there two elements of entrapment? Lack of predisposition and inducement? Correct. Aren't there some recordings that were admitted in the evidence where he indicated that he'd had sex with an underage minor before? There is, but there isn't context necessarily to that particular admission. He doesn't say if he did that when he was an adult or if he was, you know, 16 years old or 14 years old. And we also don't know how a jury would have resolved that particular question because the jury never really got to consider the predisposition part of the entrapment defense because it never considered entrapment. The only thing that was before the District Court was the legal ruling on inducement. And that doesn't have to do with a defendant's predisposition, it just has to do with the conduct that the government engaged in. Well, as far as lack of predisposition goes, if he was an adult and he had a relation with an underage minor before, that would be the end of the matter, right? I mean, that would establish, I mean, you would be unable to establish lack of predisposition. It would be beyond my abilities as a lawyer to argue that. As far as inducement is concerned, didn't the agent give him a couple of opportunities to back out? That's correct. The agent did do that. But there isn't a case in this circuit that says the fact that you've given somebody an opportunity to back out in and of itself means that you haven't established inducement. It's important to realize or to recognize that inducement is simply a burden of production on the defendant. It's not really a burden of persuasion. And the question that's before the district court is, based on this record, could a jury have reasonable doubt about entrapment? And our position is that the district court made an error of law that you get to review de novo because it didn't realize that this evidence was sufficient to get to a jury. Now, in terms of convincing a jury about that, you know, that's sort of anybody's guess because we don't know. It wasn't presented to the jury. He still argued that to the jury, though, didn't he? He nibbled on the edges. The government points out a couple of things that he said. You know, he was salesy. At one point in the four-day jury trial, the defense counsel used the word entrapment, but that wasn't directed to the agent's conduct in this case. It was directed to stings in general and what's the scope of the limit of conduct that the government can engage in. And he said, well, you don't want to do that because that might be, I think the phrase was sort of like entrapment. But that's not directed to what she was doing with respect to Unrein. He was just talking about a sting in general. My understanding was that there was absolutely no limit on the evidence you could produce or the arguments you could make to the jury. Am I wrong? It depends on how you interpret the judge's order. When the judge granted the government's motion in limine, she didn't enter a written order. But her language is there's no entrapment here and you will not be able to have the entrapment defense. That's the court's ruling. And it depends on how you interpret that ruling. My interpretation of that ruling is she's saying you don't get to talk about this at all. And I think that's what the defense counsel. Did you ask, did you try to introduce evidence that was rejected or did you try to make an argument that was held improper? No. Did you ask the district court if what she said meant that you were barred from introducing evidence and making argument about your entrapment story? No. Okay. So at the very most, you would have an error that you're talking about that would be subject to plain error. I disagree with that. I think that we created a sufficient record to review the structural error argument by its normal de novo standard. And here If you didn't do those things I just asked you about, I did not read what the district court said to mean at all that you were limited. And in fact, you were not limited. So my view has been that, you know, you could do whatever you wanted to. I understand your point of view. I disagree with it. I think that it was clear from the context of the motions practice and the argument in court before the judge ruled on the motion in Limoney that that is what she meant. And the defense counsel repeatedly said things like you're tying my hands behind my back. You're giving a pretrial ruling on entrapment and now I'm going to be scared to get into that. And the judge then gives a ruling saying there is no entrapment and you don't get the instruction. And so I think that was the defense counsel's interpretation of the ruling as well. Now I can't even use the word entrapment. And he did that throughout the entire four day trial with the one exception when he's talking about government conduct in general, not government conduct as it related to Mr. Unrein. But you talked in your closing argument about the agent talking about the little girl being disappointed if you didn't, if the defendant didn't come on and come twice. I think she said that and then sounded like she might have been crying. You mentioned all of that, right? We did. And like I said, the defense counsel nibbled around the edges of this. But he understood that he was prevented from talking about entrapment. And that was something that the jury was expecting to hear because during jury selection, one of the jurors said, oh, I've seen TV. This sounds like entrapment to me. And then the judge says, well, you've raised a legal issue and I'm going to be dealing with that. So the jury at that point is thinking, oh, well, the judge is going to tell us about entrapment. And then they never get told about entrapment and the parties never litigate entrapment. And then they go to, you know, the deliberations and they're going to have this conversation. Like, oh, I thought when we did jury selection, I thought this case was about entrapment. Was that person selected to serve on the jury? I don't remember that. But I do know that it was, the question was asked before the Venieri panel. And so the entire panel heard the question. And, you know, you could draw the inference that they were, the whole jury was expecting that. I can look into that and give you an answer later. We'll look into it. Okay. It seems to me that there is overwhelming evidence of predisposition here. And therefore, all of our case law says that the crux, the very focus of entrapment is predisposition. It seems to me that there simply is no foundation, evidentiary foundation here for an entrapment defense instruction. Because the evidence of predisposition is overwhelming. It could be. But remember, we didn't get the instruction and our position is we didn't get to litigate it. So we don't know. I'm talking about the evidentiary foundation, which you have to surmount in order to get the instruction. Right. But we don't have to address predisposition in making the sufficiency showing to get the instruction. All we need to show is inducement. And then it becomes a jury issue. I'm going to read you what you need to show. And this is under our Brown case, but it's throughout our case law. An evidentiary, to make your evidentiary foundation, you have to show, create a jury issue that, and I'm quoting now, the government's conduct created a substantial risk that the offense would be committed, and listen to this, by a person other than one ready to commit it. It seems clear to me that predisposition is bound up in that evidentiary foundation. Again, I understand how you're interpreting that, but I think that the two elements are separate. How else can you interpret other than one ready to commit it? Because other cases talk about it being inducement only, and then once you establish inducement, it becomes a jury issue on predisposition. I don't know how we could have judges making that factual finding without creating a Sixth Amendment problem. Because that seems to me to be a factual finding that would have to be determined by the jury. Let me switch a little from that and say my understanding is that the element of inducement includes an element of persuasion or coercion of some kind. That's correct. Can you point to anything on these facts, given the fact that he called back again and again and again when she hadn't even returned his calls for a while? Where is the persuasion? Where's the coercion? The three things that we would hang our hat on here is she offered him friendship, and then she kind of took advantage of his emotions by crying and talking about her daughter's disappointment if he weren't to show up. So those are the things that we would say are the persuasion. And our best case for this, I think, is the United States against Pullman decision from the Ninth Circuit. Now there are differences between that situation and this situation, because that was something that lasted over many weeks, I think months, and this is something that took place over two days. But that's the case that we think is our best one to support our position. You have another issue that you feel has some merit with the time that you have left? Yeah. About the Craigslist ad, it seems to be. Yeah. The others are sort of, I think. Right. So those advertisements, we think, created—the introduction into evidence of those advertisements created an unfair trial. Those were advertisements that addressed his relationships with adults, not with children. And they were pretty saucy advertisements. They talked about his sexual proclivities in a number of ways that are quite unusual. And we repeatedly objected to this and said, this is going to create an unfair trial. We asked for a mistrial. And we think these pieces of evidence were irrelevant and unduly prejudicial. Were those the ads that introduced elements of homosexuality and so forth? Yeah, correct. Did you ask specifically that those be eliminated or redacted? Correct. We asked for everything to be excluded. I didn't ask that. I asked if you said, well, Judge, I see you ruled against me on those, but at least redact anything that has to do with his association with homosexuality and transvestites. We didn't ask for redaction. We asked for the exclusion of those pieces of evidence. Did you ask specifically to exclude only that? Admit everything else. I don't like your ruling on that. But specifically exclude those that have that. The sequence of events was we objected to everything. The judge splits the baby. And then we still say, Judge, your splitting of the baby is inadequate. And we want those things excluded. And if you don't exclude them, we want a mistrial. So I think this is a very So I'm taking your answer to my question to be no. You did not pinpoint specifically the homosexuality and transvestite references? No. I think the answer is yes, because we explained that the reason we want these 21 ads and 8 ads out is because of those specific sexual peccadilloes. And you specifically said that because of those? Yes. Okay. Yes. That's our position. All right. Are there any other questions? I think you've reserved some time for rebuttal. And we'll hear from the government and the cider. Okay. May I please the court? Jermaine Cider for the United States. Six months of time versus two days wasn't the only difference between this case and Pullman. Do you mind answering? I did not actually look at the record, so I don't know whether he objected specifically to the homosexual references and transvestite references, the ones that might have been more damaging. He did not ask for the specific exclusion of, you mean like a redaction from the ads? No, he did not ask for that. And did he say all of these that you're letting in, Judge, are especially bad because of references to homosexuality and transvestites? That was part of his, his basis was these ads were prejudicial because of sexual deviancy. And that was, those were the examples. And he thought homosexuality and transvestites were part of this idea that it's going to prejudice the jury. What part of the ones that were admitted, were there just a few that involved this homosexuality and transvestites and so forth, or did it run through the entirety of what was actually admitted? The transvestites, I only saw one ad. And it was, it was, I believe the exact link, which was Melvin dressing feminine sometimes. That was one ad. And then there were a few that were male, there were males seeking male relationships. But these ads, that is, first of all, these ads were highly probative of his criminal intent. And then when you look at the prejudice, these aren't, these aren't any more prejudicial than the child pornography that he had. I understand that. But what I was trying to aim at is whether he, in effect, made an objection specifically with respect to those and not with respect to all of the ones that were admitted. He did not. He asked for the exclusion of all 700 of the ads that he had responded to, and he asked for the exclusion of all 21 ads that he himself had posted. And to, one of you asked if, one of the judges asked about the juror being stricken, or the juror was stricken, so the juror didn't serve on the panel. So I do want to point to that question. But turning back to... The juror's answer could have influenced the people who were ultimately selected to serve on the jury, though, couldn't it? The what? In other words, the jury, the member of the benaire was not selected and made reference to entrapment. And so there was an indication that entrapment would be a defense in this case. And they were expecting it, that juror's answer could have influenced the others who were selected to serve on the jury, couldn't it? No. For two points. First of all, when you look at what the judge said, the judge didn't promise an instruction on entrapment. The juror said, could this be an entrapment? And the juror said, could this be an entrapment? And the court said, you've raised a legal issue that the court will be dealing with, but if you serve on this jury, you will be receiving a set of instructions and you're to follow those instructions whether you believe it or not. And then as to the second point as to whether this would affect the veneer or the other members of the jury, I believe there are a few jurors who were on it. He hasn't raised a jury taint issue. That wasn't the issue before this court. And so he's raised this point as some kind of, I think, evidence that he was entitled to an entrapment defense. But he didn't satisfy his burden of producing sufficient evidence from which a jury could find entrapment. And that's why the court correctly excluded the defense. What was his defense at trial? It's not, you know, it wasn't me on the conversation, on the recorded conversations. What was his defense? His theory of defense at trial, he had a few, but it all went to, I didn't have the intent to entice this child. And his theory was, I just wanted to go over there to be a father figure. I wanted to go over and he did do a little of, I was maybe just interested in April, the adult. When you look at the transcript, isn't it evident that his defense is I was entrapped? I was entrapped, ladies and gentlemen of the jury. The what? I was entrapped, ladies and gentlemen of the jury. That was his entire defense at the trial, wasn't it? He, that is essentially what he was arguing, yes. It seems like if that's your defense and the judge refuses to give you an entrapment instruction, my understanding of our case law is it's an extremely low burden of production to produce more than a scintilla of evidence showing government inducement. It's a low burden, isn't it? That's not, but that doesn't say what he had to show. What he had to show was evidence sufficient from which a reasonable jury could find that the government's conduct created a significant risk that an otherwise innocent person would commit the crime. And that is what, and the evidence didn't show that. And so he was not entitled to a jury instruction. You know, you look at his alleged inducement is the mother saying that my child is so disappointed if you don't come over to have sex with her, which is just another way of saying that this child is super excited for you to come over to have sex with her. That is not something that creates a significant risk or any risk at all that someone who's not willing, already willing to have sex with a child or entice a child would commit child enticement. It's the opposite. It would repulse somebody. That is only something you say to motivate someone who's interested in having sex with a child. And so that's why, and he can't point to anything that would show, that would create that significant risk. And are there any other questions on that issue? I have a question on a little different issue. It still has to do with the entrapment defense, but you cite Sistronk at page 1333 and Brown at page 623 for the proposition that any inducement to count at all has to be an attempt to manipulate a non-criminal motive. Like in one of the cases involving an airline, the government agent was saying, you've got to help this poor fellow because the drug lords are about to kill him, you know. Correct. I looked at those pages of those two cases and I did not see that they supported the position that the manipulation had in order to be counted to deal with a non-criminal motive. I see the sense of it, but I didn't see any case law to support that. Well, these are different formulations of, these are different ways of saying the kind of conduct that would create a significant risk that an innocent person would commit the crime. And so when you are applying pressure or appealing to or manipulating a non-criminal motive, that is the kind of conduct that would create a significant risk that an innocent person would be committing. We're not trying to say that that's the only way or that you have to across the board, you have to show it's a manipulation of a non-criminal motive. I can see cases where you could appeal to someone's criminal motive, but apply a lot of pressure, you know, harass them. They say no and you say, come on, come on, come on. I mean, it depends on the circumstances that could, but ultimately it's the question of taking everything together. Is this something that would create that risk, that it would get someone who's not ready to commit the crime to commit the crime? But, and here we don't, when the crime is child enticement, saying that the child's excited to have sex with you is not the kind of conduct that would create that risk. If I can turn to something else for now. What's your answer to the defendants pointing out that the prosecutor's closing argument contains, shall we say, maybe remarks that would have been better left out? Or what? Would have been better left out, some of the things that the prosecutor said in closing. I mean, these comments were not, or our position is that these comments were not improper and that they were not prejudicial. Because, is there one in particular that you were asking about? Yeah, talking about the pictures being disgusting, about scars left on children for the rest of their lives as a result of this kind of conduct, that kind of stuff. Well, okay, using the word disgusting, that's not inaccurate. And if anything, it probably benefits the defendant because this is a shorthand way and less prejudicial way than actually describing what the child pornography depicted. So that's not improper. Haunting the closing argument that, oh, is this going to be a really wonderful experience for a 12-year-old? It's more like haunt her forever. Mr. Enright's objection was that you needed expert testimony to support that argument. And that's just common sense, that a child who experiences, a 12-year-old girl who experiences sexual abuse, that's a harmful experience and one that's going to carry with her for a long time. And then the part that he doesn't care about any scars he'll leave on the child, and that goes directly to his theory of defence, which was, I want to be a father figure, a father figure who cares about this child. And that's not what he was doing. He didn't care about the harm that he left on the child. And so these are all just part of, they're relevant to the, they're based on the evidence and they're not prejudicial to him. And he can't show the harm that these comments would show. What about the question, the concept that I posed to your opponent that predisposition really is part and parcel of the evidentiary foundation that a defendant has to adduce in order to get an instruction and that language is, it has to create a substantial risk that the offence would be committed by a person other than one ready to commit it. That other than one ready to commit it seems clear to me to be predisposition. What do you think about that concept? And are there cases to support that? I agree that the concept of, yeah, I agree with the concept that predisposition, this is, predisposition is the crux of the entrapment offense. And that is wrapped into the definition of inducement because we're asking what someone who's not disposed to do this, how they would respond to the government's conduct. And that is the, that is the standard. And so you can't separate those two. I looked and I did, I see lots of cases. I mean, every one of our cases sets this as the standard that defendant has to show this particular evidentiary foundation to get the instruction. And also, there are many, many cases in deciding that issue, did he give enough, which consider predisposition evidence. But I've never seen a case that says what they're doing, says that they are, in fact, considering predisposition evidence in assessing whether or not the evidentiary foundation to get the entrapment instruction has been satisfied. Do you know of any? I don't. And I think what you're talking about is all these cases that are pointing out, you know, in the last 40 years since Timberlake, this court has consistently affirmed the district court's finding that there is insufficient evidence to warrant the entrapment instruction. And those cases are consistently pointing out that the defendant has shown no reluctance, is completely willing and eager to commit this crime. And that is the part that folds into the predisposition that you're talking about. Because that is evidence of what an innocent person or a non, someone who's not predisposed to commit the crime. And so I think that's where the overlap happens. And I think what Mr., what counsel has been talking about is the separation of two elements. It goes to your evidentiary burden as to each element in order to get the instruction. But I do agree that you can't, the concept of predisposition is folded into the inducement definition. Does the court have any other questions? I see no more questions. Thank you, Ms. Sider. Thank you. And Mr. Burns, you have reserved some time for rebuttal argument. I just want to address a couple of questions that the panel has already asked. Judge Anderson, you were asking about the objection to the evidentiary rulings. My, I suggest you look at Dock 175 at pages 10 through 17. And that's where Agent McAteer is testifying. And the exhibit comes in with the 21 correct list posts and the eight additional ones. And that's where counsel says, I object, I move for mistrial. Now all of Mr. Unright's sexual proclivities are now supposedly for the jury to judge, even though there's not a single issue in the elements dealing with sexual proclivities except for the interest of a child. He doesn't say homosexuality. He doesn't say, you know, some of the specific sexual proclivities, but he just refers to them in general. So that's where we think the objection was sufficient. We've asked about the non-criminal motive. That's Judge Black's opinion in United States v. Brown. And there she states the standard, and then she says, as the First Circuit has recently observed, inducement consists of opportunity plus something like excessive pressure or manipulation of a non-criminal motive. One way of reading that is, this is an example. Another way of reading that would be, this is the only way you do it. I think the better way of reading it is like, this is an example of how the defendant can meet his burden under the test. Do you happen to know what page you're looking at? Uh... It's... 624, I think. Okay, thank you. Yeah, of Brown. And it cites... Oh, I'm looking at the wrong thing, sorry. It's page... 623 of Brown, and it's citing United States v. Gendron, which is the First Circuit decision. Were you clerking for Judge Black when that opinion was cited? I think I was a junior in high school. Alright, okay. Not yet. I was thinking about clerking for Judge Black. And then the final part is, I don't think the government, or I guess there's two more points, I don't think the government and I agree on how the standard is phrased. We view it as like, it's a burden of production, the evidence is viewed in light most favorable to us, and the government seems to have a view that it's a little bit more difficult than it really is. But that's something for you to explore in the opinion that you write. And Judge Anderson, you've raised a really interesting idea about the predisposition being kind of tucked into the inducement analysis. Like I said, I understand what you're saying. I just don't agree with it, and I can't really explain a wonderful answer why that is. I just see it as like, it's a burden of production. Once you meet the burden of production, it becomes a jury issue. And I think if it didn't become a jury issue... Even if it is a jury issue, in this particular case, it seems to me the evidence of predisposition is so matter, and your right to trial by jury and so forth is beside the point. I understand that too, because that would go to harmlessness, but our response to that would be, well, we didn't really get to present our case on predisposition, and so for you to rule on harmlessness as to this would put us in an awkward place where we didn't get to tell our story, and now it's harmless because we were trying to follow what the district judge's ruling was. That's our case, as the other issues are just rely on the briefs. Alright, thank you. And Mr. Burns, it's not always easy to find a lawyer who's willing to accept representation in a case like this, so the court thanks you for your service. You're welcome. Thank you.